**(FOR USE IN CIVIL CASES WITH MAG JUDGE AS PRESIDER)**

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

|  |  |
|---|---|
| Plaintiff(s) | ) |
| | ) |
| | )        Case No._____ |
| vs. | ) |
| | ) |
| Defendant(s) | ) |
| | ) |

**CONSENT TO EXERCISE OF JURISDICTION BY**
**UNITED STATES MAGISTRATE JUDGE**

In accordance with provisions of Title 28, U.S.C. Sec. 636(c)(1), the undersigned (party)(counsel of record for _____) in the above-captioned civil matter hereby voluntarily consents to have a United States Magistrate Judge conduct any and all further proceedings in the case, including trial and entry of a final judgment, with direct review by the Ninth Circuit Court of Appeals if an appeal is filed.

Date: _____         _____
                                                        Signature

                                                         _____
                                                        Print Name

### DISTRICT JUDGE OPTION

Pursuant to Title 28, U.S.C. Sec. 636(c)(2) the undersigned (party)(counsel of record for _____) in the above captioned civil matter acknowledges the availability of a United States Magistrate Judge but elects to have this case randomly assigned to a United States District Judge.

Date: _____         _____
                                                        Signature

                                                         _____
                                                        Print Name

### CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Consent was served (by mail) (by hand delivery) on all parties of record in this case, this _____ day of _____, 20\_\_\_\_.

                                                         _____
                                                        Signature

**DO NOT ELECTRONICALLY FILE.** RETURN THIS FORM TO THE CLERK'S
OFFICE NO LATER THAN TWENTY DAYS FROM
YOUR APPEARANCE IN THIS CASE.

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

## CONSENT TO EXERCISE OF JURISDICTION
## BY UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS TO ALL PARTIES

Pursuant to Local Rule 3.8(a), all civil cases will be randomly assigned to a U.S. District Court Judge or to a U.S. Magistrate Judge.

When a case is filed and assigned to a U.S. Magistrate Judge, consent forms, for all parties, are stamped with a case number and given to the individual who is filing the case. On these forms, consent may be give to the jurisdiction of the magistrate judge by signing the consent section of the form. If all parties consent, the case will remain with the magistrate judge, pursuant to 28:636(c)(1). These cases are assigned to a magistrate judge for all purposes, including trial and final entry of judgment. Any appeal from a judgment entered by the Magistrate Judge may be taken directly to the United States Court of Appeals for the Ninth Circuit in the same manner as an appeal from any other judgment of a district court.

Magistrate Judges do not conduct trials in felony criminal cases. Because of this, criminal cases will not interfere with scheduling and trials before a Magistrate Judge. It is likely that a consent to a Magistrate Judge assignment will mean that this civil case will be resolved sooner and less expensively. However, consent is voluntary, and no adverse consequences of any kind will be felt by any party or attorney who objects to assignment of a case to the Magistrate Judge.

**The party filing the case or removal is responsible for serving all parties with the consent forms.**

If any party chooses the district judge option, the case will be randomly reassigned to a U.S. District Court Judge. To elect to have the case heard before a U.S. District Court Judge, the District Judge Option section of the form must be completed.
.
**Each party must file the completed consent form and certificate of service with the court no later than 20 days after entry of appearance. This document should be filed in paper form only** and must serve a copy by mail or hand delivery upon all parties of record in the case.

AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

District of      ARIZONA

VICKI WEEKS,

        V.

**SUMMONS IN A CIVIL CASE**

MERCK & COMPANY, INC.

CASE

TO: (Name and address of Defendant)

Merck & Company, Inc.
One Merck Drive
P.O. Box 100
Whitehouse Station, NJ

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Mark P. Robinson, Jr.
One Merck Drive
P.O. Box 100
Whitehouse Station, NJ

an answer to the complaint which is served on you with this summons, within     20     days after service
of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for
the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this
Court within a reasonable period of time after service.

CLERK

2:36 pm, Apr 02, 2008
s/Richard H. Weare, Clerk

DATE

(By) DEPUTY CLERK

**(FOR USE IN CIVIL CASES WITH MAG JUDGE AS PRESIDER)**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

|                          |   |                     |
|--------------------------|---|---------------------|
|                          | ) |                     |
|                          | ) |                     |
| Plaintiff(s)             | ) | Case No._____ |
|                          | ) |                     |
| vs.                      | ) |                     |
|                          | ) |                     |
| Defendant(s)             | ) |                     |
|                          | ) |                     |

**CONSENT TO EXERCISE OF JURISDICTION BY**
**UNITED STATES MAGISTRATE JUDGE**

In accordance with provisions of Title 28, U.S.C. Sec. 636(c)(1), the undersigned (party)(counsel of record for _____) in the above-captioned civil matter hereby voluntarily consents to have a United States Magistrate Judge conduct any and all further proceedings in the case, including trial and entry of a final judgment, with direct review by the Ninth Circuit Court of Appeals if an appeal is filed.

Date: _____       _____
                                  Signature

                                  _____
                                  Print Name

**DISTRICT JUDGE OPTION**

Pursuant to Title 28, U.S.C. Sec. 636(c)(2) the undersigned (party)(counsel of record for _____ _____) in the above captioned civil matter acknowledges the availability of a United States Magistrate Judge but elects to have this case randomly assigned to a United States District Judge.

Date: _____       _____
                                  Signature

                                  _____
                                  Print Name

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing Consent was served (by mail) (by hand delivery) on all parties of record in this case, this _____ day of _____, 20____.

                                  _____
                                  Signature

**DO NOT ELECTRONICALLY FILE.** RETURN THIS FORM TO THE CLERK'S
OFFICE NO LATER THAN TWENTY DAYS FROM
YOUR APPEARANCE IN THIS CASE.

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

## CONSENT TO EXERCISE OF JURISDICTION
## BY UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS TO ALL PARTIES

Pursuant to Local Rule 3.8(a), all civil cases will be randomly assigned to a U.S. District Court Judge or to a U.S. Magistrate Judge.

When a case is filed and assigned to a U.S. Magistrate Judge, consent forms, for all parties, are stamped with a case number and given to the individual who is filing the case. On these forms, consent may be give to the jurisdiction of the magistrate judge by signing the consent section of the form. If all parties consent, the case will remain with the magistrate judge, pursuant to 28:636(c)(1). These cases are assigned to a magistrate judge for all purposes, including trial and final entry of judgment. Any appeal from a judgment entered by the Magistrate Judge may be taken directly to the United States Court of Appeals for the Ninth Circuit in the same manner as an appeal from any other judgment of a district court.

Magistrate Judges do not conduct trials in felony criminal cases. Because of this, criminal cases will not interfere with scheduling and trials before a Magistrate Judge. It is likely that a consent to a Magistrate Judge assignment will mean that this civil case will be resolved sooner and less expensively. However, consent is voluntary, and no adverse consequences of any kind will be felt by any party or attorney who objects to assignment of a case to the Magistrate Judge.

**The party filing the case or removal is responsible for serving all parties with the consent forms.**

If any party chooses the district judge option, the case will be randomly reassigned to a U.S. District Court Judge. To elect to have the case heard before a U.S. District Court Judge, the District Judge Option section of the form must be completed.
.
**Each party <u>must</u> file the completed consent form and certificate of service with the court no later than 20 days after entry of appearance. This document should be filed in paper form only** and must serve a copy by mail or hand delivery upon all parties of record in the case.

1  **Ellen R. Serbin, AZ SBN 011706**
   **PERONA, LANGER, BECK,**
2  **LALLANDE & SERBIN**
   300 East San Antonio
3  Long Beach, CA 90807-0948
   562-426-6155; Fax 562-988-9365
4
5  **Mark P. Robinson, Jr.,** SBN 054426
   **Cynthia L. Garber,** SBN 208922
6  **ROBINSON, CALCAGNIE & ROBINSON**
   620 Newport Center Drive, 7th Floor
7  Newport Beach, CA 92660
   949-720-1288; Fax 949-720-1292
8
   Attorneys for Plaintiff
9
10
11                UNITED STATES DISTRICT COURT
12                  DISTRICT OF ARIZONA
13
14  VICKI WEEKS,                          )  **CASE NO.   CV 08-00623-PHX-DKD**
                                          )
15                                        )
                                          )  **NOTICE OF TRANSMITTAL OF**
16              Plaintiff,                )  **NOTICE OF TAG-ALONG ACTION**
                                          )
17  vs.                                   )
                                          )
18                                        )
                                          )
19  MERCK & COMPANY, INC.,                )
                                          )
20                                        )
                                          )
21              Defendant.                )
                                          )
22                                        )
                                          )
23                                        )
                                          )
24                                        )
                                          )
25  ──────────────────────────────────────
26  TO:   THE CLERK OF THE UNITED STATES DISTRICT COURT, CENTRAL
27        DISTRICT OF CALIFORNIA,  AND ALL INTERESTED PARTIES
28

1

PLEASE TAKE NOTICE that on April 9, 2008, a Notice of Tag-Along

2

3

Action in the above-entitled matter was transmitted to the United States District

4

Court Southern District of New York, MDL No. 1789, *In Re: Fosamax Products*

5

*Liability Litigation*.  A copy of said Notice is attached as Exhibit "A".

6

7

Dated:  April __, 2008

8

By: _____

9

**Ellen R. Serbin, AZ SBN 011706**
**PERONA, LANGER, BECK,**
**LALLANDE & SERBIN**

10

Attorneys for Plaintiff

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# BEFORE THE JUDICIAL PANEL

# ON MULTIDISTRICT LITIGATION

IN RE:                                    )    MDL DOCKET NO. 1789 (JFK)
                                          )
FOSAMAX PRODUCTS LIABILITY                )
LITIGATION                                )
_____  )

## NOTICE OF TAG-ALONG
## ACTION BY PLAINTIFF, VICKI WEEKS

In accordance with Rule 7.2(I) of the Rules of Procedure of the Judicial Panel on

Multidistrict Litigation, Plaintiff, Vicki Weeks (hereinafter "Plaintiff"), hereby gives

notice to the Clerk of the Panel and all parties in the above-captioned litigation of a new

"tag-along action," as defined by Rule 1.1.

As set forth in the attached Summons and Complaint, a new action, *Vicki Weeks v. Merck & Co.,* was recently filed by Plaintiff's counsel in the Central District of California on April 1, 2008, Case No. CV-08-00623-PHX-DKD (see Exhibit "A").  The Plaintiff's civil action involves common questions of law and fact with the above-captioned action currently under consideration by the Panel.  Accordingly, Plaintiff respectfully requests that the Panel treat the Plaintiff's recently filed action as a "tag-along action."

Dated: April 10, 2008                ROBINSON, CALCAGNIE & ROBINSON


By: _____
                Mark P. Robinson, Jr.
                Cynthia L. Garber
                T: 949-720-1288
                F: 949-720-1292

                Attorneys for Plaintiff
                Vicki Weeks

**BEFORE THE JUDICIAL PANEL**

**ON MULTIDISTRICT LITIGATION**

IN RE:                                                    )    MDL DOCKET NO. 1789 (JFK)
                                                         )
FOSAMAX PRODUCTS LIABILITY        )
LITIGATION                                           )
_____ )

**CERTIFICATE OF SERVICE**

I do certify that I have served a copy of Notice of Tag-Along Action by Plaintiff,

Vicki Weeks, upon the following counsel of record, by placing a copy of same in the

United States Mail, properly addressed and postage prepaid, via first class mail, on this

10th day of April, 2008.

Christopher A. Seeger                          Plaintiffs' Liaison Counsel
Seeger Weiss LLP
One William Street
New York, NY 10004
(212) 584-0700

Alyson B. Jones
Butler Snow, O'Mara,
Stevens & Cannada
POB 22567
Jackson, MS 39225-2567
601-948-5711

Attorneys for Defendant,
Merck & Co.

ROBINSON, CALCAGNIE & ROBINSON

By: _____
       Mark P. Robinson, Jr.
       Cynthia L. Garber
       Tel:  949-720-1288
       Fax:  949-720-1292

       Attorneys for Plaintiff
       Vicki Weeks

EXHIBIT "A"

AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

District of     ARIZONA

VICKI WEEKS,

**SUMMONS IN A CIVIL CASE**

V.

MERCK & COMPANY, INC.

CASE

TO: (Name and address of Defendant)

Merck & Company, Inc.
One Merck Drive
P.O. Box 100
Whitehouse Station, NJ

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Mark P. Robinson, Jr.
One Merck Drive
P.O. Box 100
Whitehouse Station, NJ

an answer to the complaint which is served on you with this summons, within     20     days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

CLERK

DATE

(By) DEPUTY CLERK

**Ellen R. Serbin, AZ SBN 011706**
**PERONA, LANGER, BECK,**
**LALLANDE & SERBIN**
300 East San Antonio
Long Beach, CA 90807-0948
562-426-6155; Fax 562-988-9365

**Mark P. Robinson, Jr.,** SBN 054426
**Cynthia L. Garber,** SBN 208922
**ROBINSON, CALCAGNIE & ROBINSON**
620 Newport Center Drive, 7th Floor
Newport Beach, CA 92660
949-720-1288; Fax 949-720-1292

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| VICKI WEEKS,<br><br>    Plaintiff,<br><br>vs.<br><br>MERCK & COMPANY, INC.,<br><br>    Defendant. | **CASE NO. _____**<br><br>**COMPLAINT**<br><br>1. Strict Liability – Failure to Warn<br>2. Strict Products Liability -- Defective Design<br>3. Negligence<br>4. Breach of Implied Warranty<br>5. Breach of Express Warranty<br>6. Deceit by Concealment<br>7. Negligent Misrepresentation<br><br>**DEMAND FOR JURY TRIAL** |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT**

Plaintiff, VICKI WEEKS, alleges as follows:

**INTRODUCTION**

This case involves the prescription drug FOSAMAX® (alendronate sodium), (hereinafter "FOSAMAX® "), which was manufactured, sold, distributed, and promoted by defendant for the treatment of osteoporosis.  Defendants misrepresented that FOSAMAX®, was a safe and effective treatment for such disorders, when in fact the drug caused serious injuries to the jaw bones, including osteonecrosis, bone loss, and degeneration.

**JURISDICTION AND VENUE**

1.    The jurisdiction of this Court over the subject matter of this action is predicated on 28 U.S.C. Section 1332. Plaintiff is a citizen of the State of California, County of Los Angeles, and Defendants are corporations, whose States of incorporation and principal places of business are as set forth in paragraph 13 below. Plaintiff is a citizen of a State different from the State where Defendants are incorporated and have their principal places of business. The amount in controversy exceeds $75,000.00, exclusive of interest and costs, and the parties are citizens of different states. Venue in this Court is proper pursuant to 28 U.S.C. §1391(c) in that substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District, and Defendants have sufficient contacts within the District to subject them to personal jurisdiction in this District.

**GENERAL ALLEGATIONS**

2.    This action is an action for damages brought on behalf of the Plaintiff who was prescribed and supplied with, received, and who ingested and consumed the prescription drug FOSAMAX®, as tested, studied, researched, evaluated, endorsed, designed, formulated, compounded, manufactured, produced, processed,

Complaint for Damages (Tort)

1  assembled, inspected, distributed, marketed, labeled, promoted, packaged,
2  advertised for sale, prescribed, sold or otherwise placed in the stream of interstate
3  commerce by Defendants. This action seeks, among other relief, general and special
4  damages and equitable relief in order to enable the Plaintiff to treat and monitor the
5  dangerous, severe and life-threatening side effects caused by FOSAMAX®.

6       3.    The injuries and damages of Plaintiff were caused by the wrongful acts,
7  omissions, and fraudulent misrepresentations of Defendants.

8       4.    At all times herein mentioned, each of the Defendants was the agent,
9  servant, partner, aider and abettor, co-conspirator and joint venturer of each of the
10  remaining Defendants herein and were at all times operating and acting within the
11  purpose and scope of said agency, service, employment, partnership, conspiracy and
12  joint venture and rendered substantial assistance and encouragement to the other
13  Defendants, knowing that their conduct constituted a breach of duty owed to
14  Plaintiff.

15       5.    There exists, and at all times herein mentioned there existed, a unity of
16  interest in ownership between certain Defendants and other certain Defendants such
17  that any individuality and separateness between the certain Defendants has ceased
18  and these Defendants are the alter-ego of the other certain Defendants and exerted
19  control over those Defendants. Adherence to the fiction of the separate existence of
20  these certain Defendants as an entity distinct from other certain Defendants will
21  permit an abuse of the corporate privilege and would sanction fraud and would
22  promote injustice.

23       6.    The damages of Plaintiff were caused by the wrongful acts, omissions,
24  and fraudulent misrepresentations of Defendants.

25       7.    At all times herein mentioned, the Defendants, and each of them were
26  engaged in the business of, or were successors in interest to, entities engaged in the
27  business of research, licensing, designing, formulating, compounding, testing,
28  manufacturing, producing, processing, assembling, inspecting, distributing,

Complaint for Damages (Tort)

1  marketing, labeling, promoting, packaging and/or advertising for sale or selling the
2  prescription drug known as FOSAMAX®, for the use and ingestion by Plaintiff.

3    8.    At all times herein mentioned, the Defendants, and each of them, were
4  corporations authorized to do business in the state of residence of Plaintiff.

5    9.    At all times herein mentioned, the officers and directors of the
6  Defendants named herein participated in, authorized and directed the production and
7  promotion of the aforementioned product when they knew, or with the exercise of
8  reasonable care should have known, of the hazards and dangerous propensities of
9  said product and thereby actively participated in the tortious conduct which resulted
10 in the injuries of Plaintiff herein.

11   10.   Plaintiff files this lawsuit within the applicable limitations period of
12 first suspecting that said drugs were the cause of any appreciable harm sustained by
13 Plaintiff. Plaintiff could not, by the exercise of reasonable diligence, have
14 discovered the wrongful cause of the Plaintiff's injuries at an earlier time because
15 the injuries were caused without perceptible trauma or harm, and when the
16 Plaintiff's injuries were discovered their cause was unknown to Plaintiff. Plaintiff
17 did not suspect, nor did Plaintiff have reason to suspect, that Plaintiff had been
18 injured, the cause of the injuries, or the tortious nature of the conduct causing the
19 injuries, until less than the applicable limitations period prior to the filing of this
20 action. Additionally, Plaintiff was prevented from discovering this information
21 sooner because Defendants herein misrepresented and continue to misrepresent to
22 the public and to the medical profession that the drugs are safe and free from serious
23 side effects, and Defendants have fraudulently concealed facts and information that
24 could have led Plaintiff to discover a potential cause of action.

## PARTIES

### The Plaintiff

27   11.   Plaintiff, VICKI WEEKS, was prescribed and supplied with, received,
28 took, ingested, and consumed the prescription drug FOSAMAX®, and was injured

Complaint for Damages (Tort)

1  as a result. Plaintiff resides in the State of Arizona, County of Pinal, and is a citizen

2  of the State of Arizona.

3

4  **The Defendants**

5      12.    Defendant, Merck & Company Inc., tested, studied, researched,

6  evaluated, endorsed, designed, formulated, compounded, manufactured, produced,

7  processed, assembled, inspected, distributed, marketed, labeled, promoted,

8  packaged, advertised for sale, prescribed, sold and distributed, or otherwise placed

9  in the stream of interstate commerce, FOSAMAX®, which was ingested by the

10 Plaintiff. Defendant, Merck & Company Inc. was and is an American

11 pharmaceutical company, incorporated under the laws of the State of New Jersey,

12 whose principal place of business is: One Merck Drive, P.O. Box 100, Whitehouse

13 Station, New Jersey. On information and belief, said entity does business in

14 California and at all times relevant herein, it developed, manufactured, marketed,

15 distributed, and sold FOSOMAX® in interstate commerce and in the state of

16 residence of Plaintiff.  At all times herein mentioned, the officers and directors of

17 the Defendants named herein participated in, authorized and directed the production

18 and promotion of the aforementioned product when they knew, or with the exercise

19 of reasonable care should have known, of the hazards and dangerous propensities of

20 said product and thereby actively participated in the tortious conduct which resulted

21 in the injuries and damages suffered by Plaintiff herein.

22      13.    This Complaint seeks redress for damages sustained by the above-

23 named Plaintiff's individual use of FOSAMAX®, manufactured and sold by Merck,

24 the Defendants herein.

25

26                            **OVERVIEW**

27      14.    FOSAMAX® is a pharmaceutical osteoprotective drug, approved by

28 the FDA for the treatment of osteoporosis.  Defendants Merck did manufacture,

---

5

1  design, package, market and distribute this drug.  Defendants Merck (hereinafter

2  "Defendants") encouraged the use of this drug in improper customers,

3  misrepresented the safety and effectiveness of this drug and concealed or

4  understated its dangerous side effects.

5      15.    The market for such osteoporosis drugs is huge.  According to Merck it

6  has experienced significant growth in the sales of FOSAMAX® $3.5 Billion in

7  2005.

8      16.    In June 1995 Merck submitted an application for FOSAMAX® which

9  was approved by the FDA in September 1995 for use in the U.S. for the treatment of

10 osteoporosis.

11     17.    At all times relevant hereto, the Defendants actually knew of the

12 defective nature of their product as herein set forth, yet continued to design,

13 manufacture, market, distribute and sell their product so as to maximize sales and

14 profits at the expense of the general public's health and safety in conscious disregard

15 of the foreseeable harm caused by this product.  Defendants' conduct exhibits such

16 an entire want of care as to establish that their actions were a result of fraud, ill will,

17 recklessness, gross negligence or willful and intentional disregard to Plaintiff's

18 rights, and hence punitive damages are appropriate.

19     18.    The damages sought herein are the direct and proximate result of

20 Defendants' wrongful conduct in connection with designing, testing, inspecting,

21 manufacturing, assembling, developing, labeling, sterilizing, licensing, marketing,

22 advertising, promoting, selling, packaging, supplying and/or distributing the

23 prescription drug FOSAMAX®.

24     19.    At all times relevant hereto, Defendants were engaged in the business

25 of designing, testing, inspecting, manufacturing, assembling, developing, labeling,

26 sterilizing, licensing, marketing, advertising, promoting, selling, packaging,

27 supplying and/or distributing the pharmaceutical drug FOSAMAX® throughout the

28 United States.

Complaint for Damages (Tort)

20.     Had Defendants properly disclosed the risks associated with using FOSAMAX®, Plaintiff would not have taken FOSAMAX®.

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

21.     FOSAMAX® (generically known as alendronate sodium) is an oral form among the class of drugs called nitrogenous bisphosphonates. This class of drugs, including Aredia has been available in the U.S. since the early 1990's.

22.     The Food and Drug Administration approved FOSAMAX® on September 1995 for the treatment of management of prevention of osteoporosis in postmenopausal women, for increasing bone mass in men with osteoporosis, for men and women with low bone mass taking glucocorticoids and those with Paget's disease.

23.     FOSAMAX® is believed to treat osteoporosis by inhibiting osteoclasis, thereby preventing bone turnover.

24.     Although FOSAMAX was aggressively and widely marketed by Merck as a safe and effective treatment far more effective than traditional calcium supplements, when in fact FOSAMAX had a significantly higher risk of osteonecrosis, a condition extremely rare except in the presence of bisphosphonate treatment.

25.     Defendants' strategy beginning in the 1995 has been to aggressively market and sell its products by falsely misleading potential users about the products and by failing to protect users from serious dangers that Defendants knew or should have known to result from use of these products.

26.     The product warnings for FOSAMAX® in effect during the relevant time period were vague, incomplete or otherwise wholly inadequate, both substantively and graphically, to alert prescribing physicians as well as consumer patients of the actual risks associated with the drug.

///

Complaint for Damages (Tort)

27.     Defendants widely and successfully marketed FOSAMAX® in the United States, by undertaking an advertising campaign extolling the virtues of FOSAMAX® in order to induce widespread use of the products.  The marketing campaign consisted of advertisements, promotional literature to be placed in the offices of doctors and other health care providers, and other promotional materials provided to potential FOSAMAX® users. The advertising program, as a whole, sought to create the image, impression and belief by consumers and physicians that the use of FOSAMAX® was safe for human use, had fewer side effects and adverse reactions than other nitrogenous bisphosphonates and would not interfere with daily life, even though Defendants knew these to be false, and even though the Defendants had no reasonable grounds to believe them to be true.

28.     Defendants purposefully downplayed and understated the health hazards and risks associated with FOSAMAX®.  Defendants, through sales representatives, promotional literature, audio conferences, professional meetings, and press releases deceived potential users of FOSAMAX® by overstating the benefits of FOSAMAX® and minimizing the known related risks associated with the drug. While withholding safety information from the FDA, the prescribing physicians and that public

29.     If the Plaintiff had known the risks and dangers associated with FOSAMAX®, said Plaintiff would not have taken FOSAMAX ® and consequentially would not have been subject to its serious side effects.

## FIRST CAUSE OF ACTION
## STRICT LIABILITY – FAILURE TO WARN

30.     Plaintiff incorporates by reference herein each of the allegations heretofore set forth in this Complaint as though fully set forth herein.

31.     Defendants, directly or indirectly, negligently and/or defectively designed, tested, inspected, manufactured, assembled, developed, labeled sterilized,

Complaint for Damages (Tort)

1  licensed, marketed, advertised, promoted, sold, packaged, supplied and/or
2  distributed the drug FOSAMAX®.

3    32.    At all times material hereto, Defendants had a duty to users and/or
4  consumers of FOSAMAX®, including Plaintiff, to exercise reasonable care in the
5  design, testing, inspection, manufacture, assembly, development, labeling,
6  sterilization, licensing, marketing, advertising, promotion, sale, packaging, supply
7  and/or distribution of FOSAMAX®.

8    33.    Defendants breached that duty and were negligent in the design, testing,
9  inspection, manufacture, assembly, development, labeling, sterilization, licensing,
10  marketing, advertising, promotion, sales, packaging, supply and/or distribution of
11  FOSAMAX® in that:  FOSAMAX® was defective when put on the market by
12  Defendants; that with such defect, FOSAMAX® was reasonably certain to be
13  dangerous when put to normal use; and that Defendants failed to use reasonable care
14  in designing or making FOSAMAX®  or in inspecting it for defects.  Specifically,
15  Defendants breached their duty by, among other things:

16    a.  Failing to include adequate warnings that would alert the
17       medical, pharmaceutical and/or scientific communities, and users
18       and/or consumers of the drug, including Plaintiff, to the potential
19       risks and serious side effects of the drug;

20    b.  Failing to adequately and properly test and inspect the drug
21       before placing the drug on the market;

22    c.  Failing to conduct sufficient testing and inspection of the drug
23       which, if properly performed, would have shown that the drug
24       had serious side effects, including, but not limited to, injuries to
25       the jaw bones, including osteonecrosis, bone loss, and
26       degeneration;

27    d.  Failing to adequately warn the medical, pharmaceutical and/or
28       scientific communities, and users and/or consumers of the drug,

including Plaintiff, of the potential risks and other serious side effects associated with the drug, including, among other things, injuries to the jaw bones, including osteonecrosis, bone loss, and degeneration;

e. Failing to provide adequate post-marketing warnings or instructions after Defendants knew or should have known of the significant risks associated with the use of the drug;

f. Failing to recall and/or remove the drug from the stream of commerce despite the fact that Defendants knew or should have known of the defective and unreasonably dangerous nature of the drug, including the significant health risks associated with the use of the drug.

g. Encouraging misuse and overuse while failing to disclose the side effects of the drug to the medical, pharmaceutical and/or scientific communities and users and/or consumers, including Plaintiff, in order to make a profit from sales.

34.     Defendants knew or should have known that FOSAMAX® caused unreasonably dangerous risks and serious side effects of which users and/or consumers of the drug, including Plaintiff, were not aware.  Defendants nevertheless advertised, promoted, marketed, sold, distributed and/or supplied FOSAMAX® knowing that there were safer methods for treatment of osteoporosis.

35.     As a direct, legal, proximate and producing result of the negligence of Defendants, Plaintiff sustained injuries including, among other things, injuries to the jaw bones, including osteonecrosis, bone loss, and degeneration.  In most of these cases, these injuries caused and continue to cause extensive pain and suffering and severe emotional distress and substantially reduced Plaintiff's ability to enjoy life. In addition, Defendants' negligence caused Plaintiff to expend substantial sums of money for medical, hospital, and related care.

36.    As a direct, legal, proximate and producing result of the negligence of Defendants, Plaintiff was injured in health, strength and activity and suffered physical injuries as well as mental anguish.  All of these said injuries caused Plaintiff intense anxiety, distress, fear, pain, suffering and distress secondary to physical injury and damages.

37.    As a direct, legal proximate and producing result of the negligence of Defendants, Plaintiff required reasonable and necessary health care treatment and services and had incurred expenses therefore.  Defendants' negligence was a contributing cause of Plaintiff's injuries and Plaintiff's economic and non-economic loss.

38.    By reason of the foregoing, Plaintiff was damaged by the negligence and wanton and willful recklessness of the Defendants.  The amount sought herein exceeds the jurisdictional limits of all lower courts that would otherwise have jurisdiction over this matter.

## SECOND CAUSE OF ACTION
## STRICT PRODUCTS LIABILITY
## DEFECTIVE DESIGN

39.    Plaintiff incorporates by reference herein each of the allegations heretofore set forth in this Complaint as though fully set forth herein.

40.    At all times material hereto, Defendants have engaged in the business of designing, testing, inspecting, manufacturing, assembling, developing, labeling, sterilizing, licensing, marketing, advertising, promoting, selling, packaging, supplying and/or distributing the drug FOSAMAX® , which is defective and unreasonably dangerous to users and/or consumers of the drug, including Plaintiff.

41.    At all times material hereto, FOSAMAX® was designed, tested, inspected, manufactured, assembled, developed, labeled, sterilized, licensed, marketed, advertised, promoted, sold, packaged, supplied and/or distributed by

Defendants in a defective and unreasonably dangerous condition in ways which include, but are not limited to one or more of the following:

    a.  When placed in the stream of commerce, the drug contained unreasonably dangerous design defects and was not reasonably safe and fit for its intended or reasonably foreseeable purpose or as intended to be used, thereby subjecting users and/or consumers of the drug, including Plaintiff, to risks which exceeded the benefits of the drug;

    b.  The drug was insufficiently tested;

    c.  The drug caused harmful side effects that outweighed any potential utility;

    d.  The drug was not accompanied by adequate labeling or instructions for use to fully apprise the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, of the potential risks and serious side effects associated with its use;

    e.  In light of the potential and actual risk of harm associated with the drug's use, a reasonable person who had actual knowledge of this potential and actual risk of harm would have concluded that FOSAMAX® should not have been marketed in that condition.

42.    At all times the drug FOSAMAX® was designed, tested, inspected, manufactured, assembled, developed, labeled, sterilized, licensed, marketed, advertised, promoted, sold, packaged, supplied and/or distributed, it was expected to reach, and did reach, users and/or consumers of the drug across the United States, including Plaintiff, without substantial change in the defective and unreasonably dangerous condition in which it was sold.

43.    At all times, Plaintiff used FOSAMAX® for its intended or reasonably foreseeable purpose.

44.     As a direct, legal, proximate and producing result of the defective and unreasonably dangerous condition of FOSAMAX®, Plaintiff sustained substantial injuries, including in some cases among other things, injuries to the jaw bones, including osteonecrosis, bone loss, and degeneration.  The defective and unreasonably dangerous condition of FOSAMAX® has caused Plaintiff to expend substantial sums of money for medical, hospital, and related care.

### THIRD CAUSE OF ACTION
### NEGLIGENCE

45.     Plaintiff incorporates by reference herein each of the allegations heretofore set forth in this Complaint as though fully set forth herein.

46.     Defendants had a duty to properly manufacture, design, formulate, compound, test, produce, process, assemble, inspect, research, distribute, market, label, package, distribute, prepare for use, sell, prescribe and adequately warn of the risks and dangers of FOSAMAX®.

47.     Defendants negligently and carelessly manufactured, designed, formulated, distributed, compounded, produced, processed, assembled, inspected, distributed, marketed, labeled, packaged, prepared for use and sold the aforementioned products and failed to adequately test and warn of the risks and dangers of the aforementioned products.

48.     Despite the fact that Defendants knew or should have known that FOSAMAX® caused unreasonable, dangerous side effects, Defendants continued to market FOSAMAX® to consumers, including Plaintiff, when there were safer, alternative methods of treating.

49.     Defendants knew or should have known that consumers such as Plaintiff would foreseeably suffer injury as a result of Defendants' failure to exercise ordinary care as described above.  Defendants' negligence was a proximate cause of

Complaint for Damages (Tort)

1  the Plaintiff's injuries, and the damages, harm and economic loss that Plaintiff
2  suffered, and will continue to suffer, as described and prayed for herein.
3
4  ## FOURTH CAUSE OF ACTION
5  ## BREACH OF IMPLIED WARRANTY
6  50.    Plaintiff incorporates by reference herein each of the allegations
7  heretofore set forth in this Complaint as though fully set forth herein.
8  51.    Prior to the time that the aforementioned products were used by the
9  Plaintiff, Defendants impliedly warranted to the Plaintiff and Plaintiff's agents and
10  physicians that said products were of merchantable quality and safe and fit for the
11  use for which they were intended.
12  52.    Plaintiff was unskilled in the research, design and manufacture of the
13  aforementioned products and reasonably relied entirely on the skill, judgment and
14  implied warranty of the Plaintiff in using the aforementioned products.
15  53.    The aforementioned product was neither safe for its intended use nor of
16  merchantable quality, as warranted by Defendants, in that FOSAMAX® had
17  dangerous propensities when put to its intended use and would cause severe injuries
18  to the user.
19  54.    As a result of the aforementioned breach of implied warranties by
20  Defendants, the Plaintiff was injured and suffered the harm and damages as alleged
21  herein.
22
23  ## FIFTH CAUSE OF ACTION
24  ## FOR BREACH OF EXPRESS WARRANTY
25  55.    Plaintiff incorporates by reference herein each of the allegations
26  heretofore set forth in this Complaint as though fully set forth herein.
27  56.    At all times herein mentioned, Defendants expressly represented and
28  warranted to Plaintiff and Plaintiff's agents and physicians, by and through

Complaint for Damages (Tort)

statements made by Defendants or its authorized agents or sales representatives, orally and in publications, package inserts and other written materials intended for physicians, medical patients and the general public, that the aforementioned product was safe, effective, fit and proper for their intended use. In reliance upon said warranties, Plaintiff purchased said product.

57.    In utilizing the aforementioned products, Plaintiff relied on the skill, judgment, representations and foregoing express warranties of the Defendants. Said warranties and representations were false in that the aforementioned products were not safe and were unfit for the uses for which they were intended.

58.    As a result of the foregoing breach of express warranties by the Defendants, Plaintiff was injured and sustained the harm and damages as herein alleged.

## SIXTH CAUSE OF ACTION
## DECEIT BY CONCEALMENT

59.    Plaintiff incorporates by reference herein each of the allegations heretofore set forth in this Complaint as though fully set forth herein.

60.    Defendants, from the time that FOSAMAX® was first tested, studied, researched, evaluated, endorsed, manufactured, marketed and distributed, and up to the present, willfully deceived Plaintiff and by concealing from Plaintiff and Plaintiff's physicians and the general public, the true facts concerning said pharmaceutical products, which the Defendants had a duty to disclose.

61.    Defendant Merck has not warned, and continues not to warn, physicians and consumers' physicians and consumers in the United States.

62.    Defendant Merck conducted a sales and marketing campaign to promote the sale of the aforementioned drug products and willfully deceive Plaintiff and Plaintiff's physicians and the general public as to the health risks and consequences of the use of FOSAMAX® Defendants were aware of the foregoing,

Complaint for Damages (Tort)

and that FOSAMAX® was not safe, fit and effective for human consumption, the use of FOSAMAX® is hazardous to health, and FOSAMAX® has a serious propensity to cause serious injuries to users, including but not limited to the injuries suffered by Plaintiff and the harm and damages sustained by Plaintiff as delineated herein.

63.    Defendants intentionally concealed and suppressed the true facts concerning FOSAMAX® with the intent to defraud Plaintiff, in that the Defendants knew that the Plaintiff's physicians would not prescribe FOSAMAX®, and the Plaintiff would not have used FOSAMAX®, if Plaintiff were aware of the true facts concerning the dangers of FOSAMAX®.

64.    As a result of the foregoing fraudulent and deceitful conduct by the Defendants, Plaintiff was injured and suffered harm and damages as alleged herein.

## SEVENTH CAUSE OF ACTION
## NEGLIGENT MISREPRESENTATION

65.    Plaintiff incorporates by reference herein each of the allegations heretofore set forth in this Complaint as though fully set forth herein.

66.    Defendants, from the time that FOSAMAX® was first tested, studied, researched, evaluated, endorsed, manufactured, marketed and distributed, and up to the present, made false misrepresentations, as previously set forth herein, to Plaintiff, Plaintiff's physicians, and the general public, including but not limited to the misrepresentation that FOSAMAX® was safe, fit and effective for human consumption. Defendants conducted a sales and marketing campaign to promote the sale of FOSAMAX® and willfully deceived Plaintiff, Plaintiff's physicians and the general public as to the health risks and consequences of the use of the aforementioned products.

67.    The Defendants made the foregoing representation without any reasonable ground for believing them to be true. These representations were made

directly by Defendants, by sales representatives and other authorized agents of said Defendants, and in publications and other written materials directed to physicians, medical patients and the public, with the intention of inducing reliance, and the prescription, purchase and use of the subject products.

68.     The foregoing representations by the Defendants were in fact false, in that FOSAMAX® was not safe, fit and effective for human consumption, the use of FOSAMAX® is hazardous to health, and FOSAMAX® has a serious propensity to cause serious injuries to users, including but not limited to the injuries suffered by Plaintiff as delineated herein.

69.     The foregoing representations by Defendants were made with the intention of inducing reliance and the prescription, purchase and use of FOSAMAX®.

70.     In reliance on the misrepresentations by the Defendants, the Plaintiff was induced to purchase and use FOSAMAX®. If the Plaintiff had known of the true facts and the facts concealed by the Defendants, said Plaintiff would not have used FOSAMAX®. The reliance of Plaintiff upon Defendants' misrepresentations was justified because such misrepresentations were made and conducted by individuals and entities that were in a position to know the true facts.

71.     As a result of the foregoing negligent misrepresentations by the Defendants, Plaintiff was injured and suffered harm and damages as alleged herein.

## PUNITIVE DAMAGES ALLEGATIONS
### (As to the First, Second, Third, Sixth, and Seventh Causes of Action, only)

72.     Plaintiff incorporates by reference herein each of the allegations heretofore set forth in this Complaint as though fully set forth herein.

73.     The acts, conduct, and omissions of Defendants as alleged throughout this Complaint were willful and malicious and were done with a conscious disregard

Complaint for Damages (Tort)

for the rights of Plaintiff and other users of the Defendants' product and for the primary purpose of increasing Defendants' profits from the sale and distribution of FOSAMAX®. Defendants' outrageous and unconscionable conduct warrants an award of exemplary and punitive damages against Defendants in an amount appropriate to punish and make an example of Defendants.

74.    Prior to the manufacturing, sale and distribution of said prescribed medication, Defendants knew that said medication was in a defective condition as previously described herein and knew that those who were prescribed the medication would experience and did experience severe physical, mental, and emotional injuries. Further, Defendants, through their officers, directors, managers, and agents, had knowledge that the medication presented a substantial and unreasonable risk of harm to the public, including Plaintiff and, as such, said consumers of said drugs were unreasonably subjected to risk of injury or death from the consumption of said product.

75.    Despite such knowledge, Defendants, acting through their officers, directors and managing agents for the purpose of enhancing Defendants' profits, knowingly and deliberately failed to remedy the known defects in said medication and failed to warn the public, including Plaintiff, of the extreme risk of injury occasioned by said defects inherent in said medication. Said Defendants and their individual agents, officers, and directors intentionally proceeded with the manufacturing, sale, and distribution and marketing of said medication knowing persons would be exposed to serious danger in order to advance Defendants' own pecuniary interest and monetary profits.

76.    Defendants' conduct was despicable, and so contemptible that it would be looked down upon and despised by ordinary decent people, and was carried on by Defendants with willful and conscious disregard for the safety of and the rights of Plaintiff, entitling Plaintiff to exemplary damages.

**WHEREFORE**, Plaintiff prays for judgment against the Defendants, as follows, as appropriate to each cause of action alleged:

1.    Past and future general damages in excess of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs, the exact amount of which has yet to be ascertained, in an amount which will conform to proof at time of trial;

2.    Past and future economic and special damages according to proof at the time of trial;

3.    Past medical and burial expenses according to proof at the time of trial;

4.    For punitive or exemplary damages according to proof on the First, Second, Third, Sixth, and Seventh causes of action;

5.    Restitution, disgorgement of profits, and other equitable relief;

6.    Injunctive relief;

7.    Attorney's fees;

8.    For costs of suit incurred herein;

9.    For pre-judgment interest as provided by law;

10.    For such other and further relief as the Court may deem just and proper.

Dated: April 1, 2008

**Ellen R. Serbin, AZ SBN 011706**
**PERONA, LANGER, BECK,**
**LALLANDE & SERBIN**
300 East San Antonio
Long Beach, CA 90807-0948
562-426-6155; Fax 562-988-9365

**Mark P. Robinson, Jr.,** SBN 054426
**Cynthia L. Garber,** SBN 208922
**ROBINSON, CALCAGNIE & ROBINSON**
620 Newport Center Drive, 7th Floor
Newport Beach, CA 92660
949-720-1288; Fax 949-720-1292

Complaint for Damages (Tort)

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial as provided by rule 38(a) of the *Federal Rules of Civil Procedure*.

Dated:  April 1, 2008

                                      _____

**Ellen R. Serbin, AZ SBN 011706**
**PERONA, LANGER, BECK,**
**LALLANDE & SERBIN**
300 East San Antonio
Long Beach, CA 90807-0948
562-426-6155; Fax 562-988-9365

**Mark P. Robinson, Jr.,** SBN 054426
**Cynthia L. Garber,** SBN 208922
**ROBINSON, CALCAGNIE & ROBINSON**
620 Newport Center Drive, 7th Floor
Newport Beach, CA 92660
949-720-1288; Fax 949-720-1292

Complaint for Damages (Tort)

1
2
3
4

**Ellen R. Serbin, AZ SBN 011706**
**PERONA, LANGER, BECK,**
**LALLANDE & SERBIN**
300 East San Antonio
Long Beach, CA 90807-0948
562-426-6155; Fax 562-988-9365

5
6
7

**Mark P. Robinson, Jr.**, SBN 054426
**Cynthia L. Garber,** SBN 208922
**ROBINSON, CALCAGNIE & ROBINSON**
620 Newport Center Drive, 7th Floor
Newport Beach, CA 92660
949-720-1288; Fax 949-720-1292

8
9

Attorneys for Plaintiff

10

11            **UNITED STATES DISTRICT COURT**

12              **DISTRICT OF ARIZONA**

13

| | |
|---|---|
| VICKI WEEKS, | ) |
| Plaintiff, | ) |
| vs. | ) |
| MERCK & COMPANY, INC., | ) |
| Defendant. | ) |

**CASE NO. _____**

**COMPLAINT**

1.  Strict Liability – Failure to Warn
2.  Strict Products Liability -- Defective Design
3.  Negligence
4.  Breach of Implied Warranty
5.  Breach of Express Warranty
6.  Deceit by Concealment
7.  Negligent Misrepresentation

**DEMAND FOR JURY TRIAL**

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

---

1

## **COMPLAINT**

Plaintiff, VICKI WEEKS, alleges as follows:

## **INTRODUCTION**

This case involves the prescription drug FOSAMAX® (alendronate sodium), (hereinafter "FOSAMAX® "), which was manufactured, sold, distributed, and promoted by defendant for the treatment of osteoporosis.  Defendants misrepresented that FOSAMAX®, was a safe and effective treatment for such disorders, when in fact the drug caused serious injuries to the jaw bones, including osteonecrosis, bone loss, and degeneration.

## **JURISDICTION AND VENUE**

1.      The jurisdiction of this Court over the subject matter of this action is predicated on 28 U.S.C. Section 1332. Plaintiff is a citizen of the State of California, County of Los Angeles, and Defendants are corporations, whose States of incorporation and principal places of business are as set forth in paragraph 13 below. Plaintiff is a citizen of a State different from the State where Defendants are incorporated and have their principal places of business. The amount in controversy exceeds $75,000.00, exclusive of interest and costs, and the parties are citizens of different states. Venue in this Court is proper pursuant to 28 U.S.C. §1391(c) in that substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District, and Defendants have sufficient contacts within the District to subject them to personal jurisdiction in this District.

## **GENERAL ALLEGATIONS**

2.      This action is an action for damages brought on behalf of the Plaintiff who was prescribed and supplied with, received, and who ingested and consumed the prescription drug FOSAMAX®, as tested, studied, researched, evaluated, endorsed, designed, formulated, compounded, manufactured, produced, processed,

Complaint for Damages (Tort)

assembled, inspected, distributed, marketed, labeled, promoted, packaged, advertised for sale, prescribed, sold or otherwise placed in the stream of interstate commerce by Defendants. This action seeks, among other relief, general and special damages and equitable relief in order to enable the Plaintiff to treat and monitor the dangerous, severe and life-threatening side effects caused by FOSAMAX®.

3.    The injuries and damages of Plaintiff were caused by the wrongful acts, omissions, and fraudulent misrepresentations of Defendants.

4.    At all times herein mentioned, each of the Defendants was the agent, servant, partner, aider and abettor, co-conspirator and joint venturer of each of the remaining Defendants herein and were at all times operating and acting within the purpose and scope of said agency, service, employment, partnership, conspiracy and joint venture and rendered substantial assistance and encouragement to the other Defendants, knowing that their conduct constituted a breach of duty owed to Plaintiff.

5.    There exists, and at all times herein mentioned there existed, a unity of interest in ownership between certain Defendants and other certain Defendants such that any individuality and separateness between the certain Defendants has ceased and these Defendants are the alter-ego of the other certain Defendants and exerted control over those Defendants. Adherence to the fiction of the separate existence of these certain Defendants as an entity distinct from other certain Defendants will permit an abuse of the corporate privilege and would sanction fraud and would promote injustice.

6.    The damages of Plaintiff were caused by the wrongful acts, omissions, and fraudulent misrepresentations of Defendants.

7.    At all times herein mentioned, the Defendants, and each of them were engaged in the business of, or were successors in interest to, entities engaged in the business of research, licensing, designing, formulating, compounding, testing, manufacturing, producing, processing, assembling, inspecting, distributing,

marketing, labeling, promoting, packaging and/or advertising for sale or selling the prescription drug known as FOSAMAX®, for the use and ingestion by Plaintiff.

8.    At all times herein mentioned, the Defendants, and each of them, were corporations authorized to do business in the state of residence of Plaintiff.

9.    At all times herein mentioned, the officers and directors of the Defendants named herein participated in, authorized and directed the production and promotion of the aforementioned product when they knew, or with the exercise of reasonable care should have known, of the hazards and dangerous propensities of said product and thereby actively participated in the tortious conduct which resulted in the injuries of Plaintiff herein.

10.    Plaintiff files this lawsuit within the applicable limitations period of first suspecting that said drugs were the cause of any appreciable harm sustained by Plaintiff. Plaintiff could not, by the exercise of reasonable diligence, have discovered the wrongful cause of the Plaintiff's injuries at an earlier time because the injuries were caused without perceptible trauma or harm, and when the Plaintiff's injuries were discovered their cause was unknown to Plaintiff. Plaintiff did not suspect, nor did Plaintiff have reason to suspect, that Plaintiff had been injured, the cause of the injuries, or the tortious nature of the conduct causing the injuries, until less than the applicable limitations period prior to the filing of this action. Additionally, Plaintiff was prevented from discovering this information sooner because Defendants herein misrepresented and continue to misrepresent to the public and to the medical profession that the drugs are safe and free from serious side effects, and Defendants have fraudulently concealed facts and information that could have led Plaintiff to discover a potential cause of action.

## PARTIES

### The Plaintiff

11.    Plaintiff, VICKI WEEKS, was prescribed and supplied with, received, took, ingested, and consumed the prescription drug FOSAMAX®, and was injured

Complaint for Damages (Tort)

as a result. Plaintiff resides in the State of Arizona, County of Pinal, and is a citizen of the State of Arizona.

**The Defendants**

12.     Defendant, Merck & Company Inc., tested, studied, researched, evaluated, endorsed, designed, formulated, compounded, manufactured, produced, processed, assembled, inspected, distributed, marketed, labeled, promoted, packaged, advertised for sale, prescribed, sold and distributed, or otherwise placed in the stream of interstate commerce, FOSAMAX®, which was ingested by the Plaintiff. Defendant, Merck & Company Inc. was and is an American pharmaceutical company, incorporated under the laws of the State of New Jersey, whose principal place of business is: One Merck Drive, P.O. Box 100, Whitehouse Station, New Jersey. On information and belief, said entity does business in California and at all times relevant herein, it developed, manufactured, marketed, distributed, and sold FOSOMAX® in interstate commerce and in the state of residence of Plaintiff.  At all times herein mentioned, the officers and directors of the Defendants named herein participated in, authorized and directed the production and promotion of the aforementioned product when they knew, or with the exercise of reasonable care should have known, of the hazards and dangerous propensities of said product and thereby actively participated in the tortious conduct which resulted in the injuries and damages suffered by Plaintiff herein.

13.     This Complaint seeks redress for damages sustained by the above-named Plaintiff's individual use of FOSAMAX®, manufactured and sold by Merck, the Defendants herein.

**OVERVIEW**

14.     FOSAMAX® is a pharmaceutical osteoprotective drug, approved by the FDA for the treatment of osteoporosis.  Defendants Merck did manufacture,

---

Complaint for Damages (Tort)

design, package, market and distribute this drug.  Defendants Merck (hereinafter "Defendants") encouraged the use of this drug in improper customers, misrepresented the safety and effectiveness of this drug and concealed or understated its dangerous side effects.

15.    The market for such osteoporosis drugs is huge.  According to Merck it has experienced significant growth in the sales of FOSAMAX® $3.5 Billion in 2005.

16.    In June 1995 Merck submitted an application for FOSAMAX® which was approved by the FDA in September 1995 for use in the U.S. for the treatment of osteoporosis.

17.    At all times relevant hereto, the Defendants actually knew of the defective nature of their product as herein set forth, yet continued to design, manufacture, market, distribute and sell their product so as to maximize sales and profits at the expense of the general public's health and safety in conscious disregard of the foreseeable harm caused by this product.  Defendants' conduct exhibits such an entire want of care as to establish that their actions were a result of fraud, ill will, recklessness, gross negligence or willful and intentional disregard to Plaintiff's rights, and hence punitive damages are appropriate.

18.    The damages sought herein are the direct and proximate result of Defendants' wrongful conduct in connection with designing, testing, inspecting, manufacturing, assembling, developing, labeling, sterilizing, licensing, marketing, advertising, promoting, selling, packaging, supplying and/or distributing the prescription drug FOSAMAX®.

19.    At all times relevant hereto, Defendants were engaged in the business of designing, testing, inspecting, manufacturing, assembling, developing, labeling, sterilizing, licensing, marketing, advertising, promoting, selling, packaging, supplying and/or distributing the pharmaceutical drug FOSAMAX® throughout the United States.

Complaint for Damages (Tort)

20.    Had Defendants properly disclosed the risks associated with using FOSAMAX®, Plaintiff would not have taken FOSAMAX®.

**FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

21.    FOSAMAX® (generically known as alendronate sodium) is an oral form among the class of drugs called nitrogenous bisphosphonates.  This class of drugs, including Aredia has been available in the U.S. since the early 1990's.

22.    The Food and Drug Administration approved FOSAMAX® on September 1995 for the treatment of management of prevention of osteoporosis in postmenopausal women, for increasing bone mass in men with osteoporosis, for men and women with low bone mass taking glucocorticoids and those with Paget's disease.

23.    FOSAMAX® is believed to treat osteoporosis by inhibiting osteoclasis, thereby preventing bone turnover.

24.    Although FOSAMAX was aggressively and widely marketed by Merck as a safe and effective treatment far more effective than traditional calcium supplements, when in fact FOSAMAX had a significantly higher risk of osteonecrosis, a condition extremely rare except in the presence of bisphosphonate treatment.

25.    Defendants' strategy beginning in the 1995 has been to aggressively market and sell its products by falsely misleading potential users about the products and by failing to protect users from serious dangers that Defendants knew or should have known to result from use of these products.

26.    The product warnings for FOSAMAX® in effect during the relevant time period were vague, incomplete or otherwise wholly inadequate, both substantively and graphically, to alert prescribing physicians as well as consumer patients of the actual risks associated with the drug.

/ / /

27.     Defendants widely and successfully marketed FOSAMAX® in the United States, by undertaking an advertising campaign extolling the virtues of FOSAMAX® in order to induce widespread use of the products.  The marketing campaign consisted of advertisements, promotional literature to be placed in the offices of doctors and other health care providers, and other promotional materials provided to potential FOSAMAX® users. The advertising program, as a whole, sought to create the image, impression and belief by consumers and physicians that the use of FOSAMAX® was safe for human use, had fewer side effects and adverse reactions than other nitrogenous bisphosphonates and would not interfere with daily life, even though Defendants knew these to be false, and even though the Defendants had no reasonable grounds to believe them to be true.

28.     Defendants purposefully downplayed and understated the health hazards and risks associated with FOSAMAX®.  Defendants, through sales representatives, promotional literature, audio conferences, professional meetings, and press releases deceived potential users of FOSAMAX® by overstating the benefits of FOSAMAX® and minimizing the known related risks associated with the drug. While withholding safety information from the FDA, the prescribing physicians and that public

29.     If the Plaintiff had known the risks and dangers associated with FOSAMAX®, said Plaintiff would not have taken FOSAMAX ® and consequentially would not have been subject to its serious side effects.

**FIRST CAUSE OF ACTION**
**STRICT LIABILITY – FAILURE TO WARN**

30.     Plaintiff incorporates by reference herein each of the allegations heretofore set forth in this Complaint as though fully set forth herein.

31.     Defendants, directly or indirectly, negligently and/or defectively designed, tested, inspected, manufactured, assembled, developed, labeled sterilized,

---

Complaint for Damages (Tort)

licensed, marketed, advertised, promoted, sold, packaged, supplied and/or distributed the drug FOSAMAX®.

32.     At all times material hereto, Defendants had a duty to users and/or consumers of FOSAMAX®, including Plaintiff, to exercise reasonable care in the design, testing, inspection, manufacture, assembly, development, labeling, sterilization, licensing, marketing, advertising, promotion, sale, packaging, supply and/or distribution of FOSAMAX®.

33.     Defendants breached that duty and were negligent in the design, testing, inspection, manufacture, assembly, development, labeling, sterilization, licensing, marketing, advertising, promotion, sales, packaging, supply and/or distribution of FOSAMAX® in that:  FOSAMAX® was defective when put on the market by Defendants; that with such defect, FOSAMAX® was reasonably certain to be dangerous when put to normal use; and that Defendants failed to use reasonable care in designing or making FOSAMAX®  or in inspecting it for defects.  Specifically, Defendants breached their duty by, among other things:

        a.  Failing to include adequate warnings that would alert the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, to the potential risks and serious side effects of the drug;

        b.  Failing to adequately and properly test and inspect the drug before placing the drug on the market;

        c.  Failing to conduct sufficient testing and inspection of the drug which, if properly performed, would have shown that the drug had serious side effects, including, but not limited to, injuries to the jaw bones, including osteonecrosis, bone loss, and degeneration;

        d.  Failing to adequately warn the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug,

Complaint for Damages (Tort)

including Plaintiff, of the potential risks and other serious side
effects associated with the drug, including, among other things,
injuries to the jaw bones, including osteonecrosis, bone loss, and
degeneration;

e. Failing to provide adequate post-marketing warnings or
instructions after Defendants knew or should have known of the
significant risks associated with the use of the drug;

f. Failing to recall and/or remove the drug from the stream of
commerce despite the fact that Defendants knew or should have
known of the defective and unreasonably dangerous nature of the
drug, including the significant health risks associated with the
use of the drug.

g. Encouraging misuse and overuse while failing to disclose the
side effects of the drug to the medical, pharmaceutical and/or
scientific communities and users and/or consumers, including
Plaintiff, in order to make a profit from sales.

34.    Defendants knew or should have known that FOSAMAX® caused
unreasonably dangerous risks and serious side effects of which users and/or
consumers of the drug, including Plaintiff, were not aware.  Defendants nevertheless
advertised, promoted, marketed, sold, distributed and/or supplied FOSAMAX®
knowing that there were safer methods for treatment of osteoporosis.

35.    As a direct, legal, proximate and producing result of the negligence of
Defendants, Plaintiff sustained injuries including, among other things, injuries to the
jaw bones, including osteonecrosis, bone loss, and degeneration.  In most of these
cases, these injuries caused and continue to cause extensive pain and suffering and
severe emotional distress and substantially reduced Plaintiff's ability to enjoy life.
In addition, Defendants' negligence caused Plaintiff to expend substantial sums of
money for medical, hospital, and related care.

Complaint for Damages (Tort)

36.    As a direct, legal, proximate and producing result of the negligence of Defendants, Plaintiff was injured in health, strength and activity and suffered physical injuries as well as mental anguish.  All of these said injuries caused Plaintiff intense anxiety, distress, fear, pain, suffering and distress secondary to physical injury and damages.

37.    As a direct, legal proximate and producing result of the negligence of Defendants, Plaintiff required reasonable and necessary health care treatment and services and had incurred expenses therefore.  Defendants' negligence was a contributing cause of Plaintiff's injuries and Plaintiff's economic and non-economic loss.

38.    By reason of the foregoing, Plaintiff was damaged by the negligence and wanton and willful recklessness of the Defendants.  The amount sought herein exceeds the jurisdictional limits of all lower courts that would otherwise have jurisdiction over this matter.

### SECOND CAUSE OF ACTION
### STRICT PRODUCTS LIABILITY
### DEFECTIVE DESIGN

39.    Plaintiff incorporates by reference herein each of the allegations heretofore set forth in this Complaint as though fully set forth herein.

40.    At all times material hereto, Defendants have engaged in the business of designing, testing, inspecting, manufacturing, assembling, developing, labeling, sterilizing, licensing, marketing, advertising, promoting, selling, packaging, supplying and/or distributing the drug FOSAMAX® , which is defective and unreasonably dangerous to users and/or consumers of the drug, including Plaintiff.

41.    At all times material hereto, FOSAMAX®  was designed, tested, inspected, manufactured, assembled, developed, labeled, sterilized, licensed, marketed, advertised, promoted, sold, packaged, supplied and/or distributed by

Complaint for Damages (Tort)

Defendants in a defective and unreasonably dangerous condition in ways which include, but are not limited to one or more of the following:

    a.  When placed in the stream of commerce, the drug contained unreasonably dangerous design defects and was not reasonably safe and fit for its intended or reasonably foreseeable purpose or as intended to be used, thereby subjecting users and/or consumers of the drug, including Plaintiff, to risks which exceeded the benefits of the drug;

    b.  The drug was insufficiently tested;

    c.  The drug caused harmful side effects that outweighed any potential utility;

    d.  The drug was not accompanied by adequate labeling or instructions for use to fully apprise the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, of the potential risks and serious side effects associated with its use;

    e.  In light of the potential and actual risk of harm associated with the drug's use, a reasonable person who had actual knowledge of this potential and actual risk of harm would have concluded that FOSAMAX®  should not have been marketed in that condition.

42.    At all times the drug FOSAMAX® was designed, tested, inspected, manufactured, assembled, developed, labeled, sterilized, licensed, marketed, advertised, promoted, sold, packaged, supplied and/or distributed, it was expected to reach, and did reach, users and/or consumers of the drug across the United States, including Plaintiff, without substantial change in the defective and unreasonably dangerous condition in which it was sold.

43.    At all times, Plaintiff used FOSAMAX® for its intended or reasonably foreseeable purpose.

Complaint for Damages (Tort)

44.    As a direct, legal, proximate and producing result of the defective and unreasonably dangerous condition of FOSAMAX®, Plaintiff sustained substantial injuries, including in some cases among other things, injuries to the jaw bones, including osteonecrosis, bone loss, and degeneration.  The defective and unreasonably dangerous condition of FOSAMAX® has caused Plaintiff to expend substantial sums of money for medical, hospital, and related care.

## THIRD CAUSE OF ACTION
## NEGLIGENCE

45.    Plaintiff incorporates by reference herein each of the allegations heretofore set forth in this Complaint as though fully set forth herein.

46.    Defendants had a duty to properly manufacture, design, formulate, compound, test, produce, process, assemble, inspect, research, distribute, market, label, package, distribute, prepare for use, sell, prescribe and adequately warn of the risks and dangers of FOSAMAX®.

47.    Defendants negligently and carelessly manufactured, designed, formulated, distributed, compounded, produced, processed, assembled, inspected, distributed, marketed, labeled, packaged, prepared for use and sold the aforementioned products and failed to adequately test and warn of the risks and dangers of the aforementioned products.

48.    Despite the fact that Defendants knew or should have known that FOSAMAX® caused unreasonable, dangerous side effects, Defendants continued to market FOSAMAX® to consumers, including Plaintiff, when there were safer, alternative methods of treating.

49.    Defendants knew or should have known that consumers such as Plaintiff would foreseeably suffer injury as a result of Defendants' failure to exercise ordinary care as described above.  Defendants' negligence was a proximate cause of

Complaint for Damages (Tort)

the Plaintiff's injuries, and the damages, harm and economic loss that Plaintiff suffered, and will continue to suffer, as described and prayed for herein.

## FOURTH CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY

50.    Plaintiff incorporates by reference herein each of the allegations heretofore set forth in this Complaint as though fully set forth herein.

51.    Prior to the time that the aforementioned products were used by the Plaintiff, Defendants impliedly warranted to the Plaintiff and Plaintiff's agents and physicians that said products were of merchantable quality and safe and fit for the use for which they were intended.

52.    Plaintiff was unskilled in the research, design and manufacture of the aforementioned products and reasonably relied entirely on the skill, judgment and implied warranty of the Plaintiff in using the aforementioned products.

53.    The aforementioned product was neither safe for its intended use nor of merchantable quality, as warranted by Defendants, in that FOSAMAX®  had dangerous propensities when put to its intended use and would cause severe injuries to the user.

54.    As a result of the aforementioned breach of implied warranties by Defendants, the Plaintiff was injured and suffered the harm and damages as alleged herein.

## FIFTH CAUSE OF ACTION
## FOR BREACH OF EXPRESS WARRANTY

55.    Plaintiff incorporates by reference herein each of the allegations heretofore set forth in this Complaint as though fully set forth herein.

56.    At all times herein mentioned, Defendants expressly represented and warranted to Plaintiff and Plaintiff's agents and physicians, by and through

14

statements made by Defendants or its authorized agents or sales representatives, orally and in publications, package inserts and other written materials intended for physicians, medical patients and the general public, that the aforementioned product was safe, effective, fit and proper for their intended use. In reliance upon said warranties, Plaintiff purchased said product.

57. In utilizing the aforementioned products, Plaintiff relied on the skill, judgment, representations and foregoing express warranties of the Defendants. Said warranties and representations were false in that the aforementioned products were not safe and were unfit for the uses for which they were intended.

58. As a result of the foregoing breach of express warranties by the Defendants, Plaintiff was injured and sustained the harm and damages as herein alleged.

## SIXTH CAUSE OF ACTION
## DECEIT BY CONCEALMENT

59. Plaintiff incorporates by reference herein each of the allegations heretofore set forth in this Complaint as though fully set forth herein.

60. Defendants, from the time that FOSAMAX® was first tested, studied, researched, evaluated, endorsed, manufactured, marketed and distributed, and up to the present, willfully deceived Plaintiff and by concealing from Plaintiff and Plaintiff's physicians and the general public, the true facts concerning said pharmaceutical products, which the Defendants had a duty to disclose.

61. Defendant Merck has not warned, and continues not to warn, physicians and consumers' physicians and consumers in the United States.

62. Defendant Merck conducted a sales and marketing campaign to promote the sale of the aforementioned drug products and willfully deceive Plaintiff and Plaintiff's physicians and the general public as to the health risks and consequences of the use of FOSAMAX® Defendants were aware of the foregoing,

and that FOSAMAX® was not safe, fit and effective for human consumption, the use of FOSAMAX® is hazardous to health, and FOSAMAX® has a serious propensity to cause serious injuries to users, including but not limited to the injuries suffered by Plaintiff and the harm and damages sustained by Plaintiff as delineated herein.

63.    Defendants intentionally concealed and suppressed the true facts concerning FOSAMAX® with the intent to defraud Plaintiff, in that the Defendants knew that the Plaintiff's physicians would not prescribe FOSAMAX®, and the Plaintiff would not have used FOSAMAX®, if Plaintiff were aware of the true facts concerning the dangers of FOSAMAX®.

64.    As a result of the foregoing fraudulent and deceitful conduct by the Defendants, Plaintiff was injured and suffered harm and damages as alleged herein.

## SEVENTH CAUSE OF ACTION
## NEGLIGENT MISREPRESENTATION

65.    Plaintiff incorporates by reference herein each of the allegations heretofore set forth in this Complaint as though fully set forth herein.

66.    Defendants, from the time that FOSAMAX® was first tested, studied, researched, evaluated, endorsed, manufactured, marketed and distributed, and up to the present, made false misrepresentations, as previously set forth herein, to Plaintiff, Plaintiff's physicians, and the general public, including but not limited to the misrepresentation that FOSAMAX® was safe, fit and effective for human consumption.  Defendants conducted a sales and marketing campaign to promote the sale of FOSAMAX® and willfully deceived Plaintiff, Plaintiff's physicians and the general public as to the health risks and consequences of the use of the aforementioned products.

67.    The Defendants made the foregoing representation without any reasonable ground for believing them to be true.  These representations were made

Complaint for Damages (Tort)

directly by Defendants, by sales representatives and other authorized agents of said Defendants, and in publications and other written materials directed to physicians, medical patients and the public, with the intention of inducing reliance, and the prescription, purchase and use of the subject products.

68.    The foregoing representations by the Defendants were in fact false, in that FOSAMAX® was not safe, fit and effective for human consumption, the use of FOSAMAX® is hazardous to health, and FOSAMAX® has a serious propensity to cause serious injuries to users, including but not limited to the injuries suffered by Plaintiff as delineated herein.

69.    The foregoing representations by Defendants were made with the intention of inducing reliance and the prescription, purchase and use of FOSAMAX®.

70.    In reliance on the misrepresentations by the Defendants, the Plaintiff was induced to purchase and use FOSAMAX®.  If the Plaintiff had known of the true facts and the facts concealed by the Defendants, said Plaintiff would not have used FOSAMAX®.  The reliance of Plaintiff upon Defendants' misrepresentations was justified because such misrepresentations were made and conducted by individuals and entities that were in a position to know the true facts.

71.    As a result of the foregoing negligent misrepresentations by the Defendants, Plaintiff was injured and suffered harm and damages as alleged herein.

## PUNITIVE DAMAGES ALLEGATIONS
### (As to the First, Second, Third, Sixth, and
### Seventh Causes of Action, only)

72.    Plaintiff incorporates by reference herein each of the allegations heretofore set forth in this Complaint as though fully set forth herein.

73.    The acts, conduct, and omissions of Defendants as alleged throughout this Complaint were willful and malicious and were done with a conscious disregard

Complaint for Damages (Tort)

for the rights of Plaintiff and other users of the Defendants' product and for the primary purpose of increasing Defendants' profits from the sale and distribution of FOSAMAX®.  Defendants' outrageous and unconscionable conduct warrants an award of exemplary and punitive damages against Defendants in an amount appropriate to punish and make an example of Defendants.

74.     Prior to the manufacturing, sale and distribution of said prescribed medication, Defendants knew that said medication was in a defective condition as previously described herein and knew that those who were prescribed the medication would experience and did experience severe physical, mental, and emotional injuries.  Further, Defendants, through their officers, directors, managers, and agents, had knowledge that the medication presented a substantial and unreasonable risk of harm to the public, including Plaintiff and, as such, said consumers of said drugs were unreasonably subjected to risk of injury or death from the consumption of said product.

75.     Despite such knowledge, Defendants, acting through their officers, directors and managing agents for the purpose of enhancing Defendants' profits, knowingly and deliberately failed to remedy the known defects in said medication and failed to warn the public, including Plaintiff, of the extreme risk of injury occasioned by said defects inherent in said medication.  Said Defendants and their individual agents, officers, and directors intentionally proceeded with the manufacturing, sale, and distribution and marketing of said medication knowing persons would be exposed to serious danger in order to advance Defendants' own pecuniary interest and monetary profits.

76.     Defendants' conduct was despicable, and so contemptible that it would be looked down upon and despised by ordinary decent people, and was carried on by Defendants with willful and conscious disregard for the safety of and the rights of Plaintiff, entitling Plaintiff to exemplary damages.

Complaint for Damages (Tort)

**WHEREFORE**, Plaintiff prays for judgment against the Defendants, as follows, as appropriate to each cause of action alleged:

1.    Past and future general damages in excess of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs, the exact amount of which has yet to be ascertained, in an amount which will conform to proof at time of trial;

2.    Past and future economic and special damages according to proof at the time of trial;

3.    Past medical and burial expenses according to proof at the time of trial;

4.    For punitive or exemplary damages according to proof on the First, Second, Third, Sixth, and Seventh causes of action;

5.    Restitution, disgorgement of profits, and other equitable relief;

6.    Injunctive relief;

7.    Attorney's fees;

8.    For costs of suit incurred herein;

9.    For pre-judgment interest as provided by law;

10.    For such other and further relief as the Court may deem just and proper.

Dated:  April 1, 2008

_____

**Ellen R. Serbin, AZ SBN 011706**
**PERONA, LANGER, BECK,**
**LALLANDE & SERBIN**
300 East San Antonio
Long Beach, CA 90807-0948
562-426-6155; Fax 562-988-9365

**Mark P. Robinson, Jr.**, SBN 054426
**Cynthia L. Garber,** SBN 208922
**ROBINSON, CALCAGNIE & ROBINSON**
620 Newport Center Drive, 7th Floor
Newport Beach, CA 92660
949-720-1288; Fax 949-720-1292

Complaint for Damages (Tort)

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial as provided by rule 38(a) of the *Federal Rules of Civil Procedure*.


Dated:  April 1, 2008                    _____

**Ellen R. Serbin, AZ SBN 011706**
**PERONA, LANGER, BECK,**
**LALLANDE & SERBIN**
300 East San Antonio
Long Beach, CA 90807-0948
562-426-6155; Fax 562-988-9365


**Mark P. Robinson, Jr.**, SBN 054426
**Cynthia L. Garber,** SBN 208922
**ROBINSON, CALCAGNIE & ROBINSON**
620 Newport Center Drive, 7th Floor
Newport Beach, CA 92660
949-720-1288; Fax 949-720-1292

Complaint for Damages (Tort)

≈ JS 44   (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a)  PLAINTIFFS

## DEFENDANTS

**(b)**  County of Residence of First Listed Plaintiff
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)**  Attorney's (Firm Name, Address, and Telephone Number)

Attorneys (If Known)

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

❑ 1   U.S. Government
       Plaintiff

❑ 3   Federal Question
       (U.S. Government Not a Party)

❑ 2   U.S. Government
       Defendant

❑ 4   Diversity
       (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                                     and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❑ 1 | ❑ 1 | Incorporated or Principal Place of Business In This State | ❑ 4 | ❑ 4 |
| Citizen of Another State | ❑ 2 | ❑ 2 | Incorporated and Principal Place of Business In Another State | ❑ 5 | ❑ 5 |
| Citizen or Subject of a Foreign Country | ❑ 3 | ❑ 3 | Foreign Nation | ❑ 6 | ❑ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ❑ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ❑ 610 Agriculture | ❑ 422 Appeal 28 USC 158 | ❑ 400 State Reapportionment |
| ❑ 120 Marine | ❑ 310 Airplane | ❑ 362 Personal Injury - | ❑ 620 Other Food & Drug | ❑ 423 Withdrawal | ❑ 410 Antitrust |
| ❑ 130 Miller Act | ❑ 315 Airplane Product | Med. Malpractice | ❑ 625 Drug Related Seizure | 28 USC 157 | ❑ 430 Banks and Banking |
| ❑ 140 Negotiable Instrument | Liability | ❑ 365 Personal Injury - | of Property 21 USC 881 | | ❑ 450 Commerce |
| ❑ 150 Recovery of Overpayment | ❑ 320 Assault, Libel & | Product Liability | ❑ 630 Liquor Laws | **PROPERTY RIGHTS** | ❑ 460 Deportation |
| & Enforcement of Judgment | Slander | ❑ 368 Asbestos Personal | ❑ 640 R.R. & Truck | ❑ 820 Copyrights | ❑ 470 Racketeer Influenced and |
| ❑ 151 Medicare Act | ❑ 330 Federal Employers' | Injury Product | ❑ 650 Airline Regs. | ❑ 830 Patent | Corrupt Organizations |
| ❑ 152 Recovery of Defaulted | Liability | Liability | ❑ 660 Occupational | ❑ 840 Trademark | ❑ 480 Consumer Credit |
| Student Loans | ❑ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ❑ 490 Cable/Sat TV |
| (Excl. Veterans) | ❑ 345 Marine Product | ❑ 370 Other Fraud | ❑ 690 Other | | ❑ 810 Selective Service |
| ❑ 153 Recovery of Overpayment | Liability | ❑ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ❑ 850 Securities/Commodities/ |
| of Veteran's Benefits | ❑ 350 Motor Vehicle | ❑ 380 Other Personal | ❑ 710 Fair Labor Standards | ❑ 861 HIA (1395ff) | Exchange |
| ❑ 160 Stockholders' Suits | ❑ 355 Motor Vehicle | Property Damage | Act | ❑ 862 Black Lung (923) | ❑ 875 Customer Challenge |
| ❑ 190 Other Contract | Product Liability | ❑ 385 Property Damage | ❑ 720 Labor/Mgmt. Relations | ❑ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ❑ 195 Contract Product Liability | ❑ 360 Other Personal | Product Liability | ❑ 730 Labor/Mgmt.Reporting | ❑ 864 SSID Title XVI | ❑ 890 Other Statutory Actions |
| ❑ 196 Franchise | Injury | | & Disclosure Act | ❑ 865 RSI (405(g)) | ❑ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ❑ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ❑ 892 Economic Stabilization Act |
| ❑ 210 Land Condemnation | ❑ 441 Voting | ❑ 510 Motions to Vacate | ❑ 790 Other Labor Litigation | ❑ 870 Taxes (U.S. Plaintiff | ❑ 893 Environmental Matters |
| ❑ 220 Foreclosure | ❑ 442 Employment | Sentence | ❑ 791 Empl. Ret. Inc. | or Defendant) | ❑ 894 Energy Allocation Act |
| ❑ 230 Rent Lease & Ejectment | ❑ 443 Housing/ | **Habeas Corpus:** | Security Act | ❑ 871 IRS—Third Party | ❑ 895 Freedom of Information |
| ❑ 240 Torts to Land | Accommodations | ❑ 530 General | | 26 USC 7609 | Act |
| ❑ 245 Tort Product Liability | ❑ 444 Welfare | ❑ 535 Death Penalty | **IMMIGRATION** | | ❑ 900Appeal of Fee Determination |
| ❑ 290 All Other Real Property | ❑ 445 Amer. w/Disabilities - | ❑ 540 Mandamus & Other | ❑ 462 Naturalization Application | | Under Equal Access |
| | Employment | ❑ 550 Civil Rights | ❑ 463 Habeas Corpus - | | to Justice |
| | ❑ 446 Amer. w/Disabilities - | ❑ 555 Prison Condition | Alien Detainee | | ❑ 950 Constitutionality of |
| | Other | | ❑ 465 Other Immigration | | State Statutes |
| | ❑ 440 Other Civil Rights | | Actions | | |

## V. ORIGIN   (Place an "X" in One Box Only)

❑ 1   Original
       Proceeding

❑ 2   Removed from
       State Court

❑ 3   Remanded from
       Appellate Court

❑ 4   Reinstated or
       Reopened

❑ 5   Transferred from
       another district
       (specify)

❑ 6   Multidistrict
       Litigation

❑ 7   Appeal to District
       Judge from
       Magistrate
       Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (**Do not cite jurisdictional statutes unless diversity**):

Brief description of cause:

## VII. REQUESTED IN
COMPLAINT:

❑ CHECK IF THIS IS A **CLASS ACTION**
UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**    ❑ Yes   ❑ No

## VIII. RELATED CASE(S)
IF ANY

(See instructions):

JUDGE

DOCKET NUMBER

DATE

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.     (a) Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations.  If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence.  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing.  In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing.  (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys.  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.     Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.

United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States.  In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked.  (See Section III below; federal question actions take precedence over diversity cases.)

**III.     Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.     Nature of Suit.**  Place an "X" in the appropriate box.  If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit.  If the cause fits more than one nature of suit, select the most definitive.

**V.     Origin.**  Place an "X" in one of the seven boxes.

Original Proceedings.  (1) Cases which originate in the United States district courts.

Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.  When the petition for removal is granted, check this box.

Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.

Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.

Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.  When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment.  (7) Check this box for an appeal from a magistrate judge's decision.

**VI.     Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity**.     Example:     U.S. Civil Statute: 47 USC 553
Brief Description: Unauthorized reception of cable service

**VII.     Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand.  In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.     Related Cases.**  This section of the JS 44 is used to reference related pending cases if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature**.  Date and sign the civil cover sheet.

AO 440  (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

District of     ARIZONA

VICKI WEEKS,

       V.

MERCK & COMPANY, INC.

**SUMMONS IN A CIVIL CASE**

CASE

TO: (Name and address of Defendant)

Merck & Company, Inc.
One Merck Drive
P.O. Box 100
Whitehouse Station, NJ

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Mark P. Robinson, Jr.
One Merck Drive
P.O. Box 100
Whitehouse Station, NJ

an answer to the complaint which is served on you with this summons, within      20      days after service
of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for
the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this
Court within a reasonable period of time after service.

CLERK

DATE

(By) DEPUTY CLERK

08 CV 4774

JUDGE KEENAN

Inasmuch as no objection is
pending at this time, the
stay is lifted.

MAY 1 9 2008

CLERK'S OFFICE
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAY - 1 2008

FILED
CLERK'S OFFICE

U.S. DISTRICT COURT
FILED
MAY 22 2008
S.D. OF N.Y.

UNITED STATES JUDICIAL PANEL
on
MULTIDISTRICT LITIGATION

## IN RE: FOSAMAX PRODUCTS LIABILITY LITIGATION

(Vicki Weeks v. Merck & Co., Inc., )
    D. Arizona, C.A. No. 2:08-623 )
Tommie L. Gomez v. Merck & Co., Inc., )
    N.D. Texas, C.A. No. 6:08-17 )

MDL No. 1789

FILED          LODGED
RECEIVED       COPY
JUN 0 2 2008
CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY                    DEPUTY

## CONDITIONAL TRANSFER ORDER (CTO-54)

On August 16, 2006, the Panel transferred four civil actions to the United States District Court for the Southern District of New York for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. *See* 444 F.Supp.2d 1347 (J.P.M.L. 2006). Since that time, 123 additional actions have been transferred to the Southern District of New York. With the consent of that court, all such actions have been assigned to the Honorable John F. Keenan.

It appears that the actions on this conditional transfer order involve questions of fact that are common to the actions previously transferred to the Southern District of New York and assigned to Judge Keenan.

Pursuant to Rule 7.4 of the <u>Rules of Procedure of the Judicial Panel on Multidistrict Litigation</u>, 199 F.R.D. 425, 435-36 (2001), these actions are transferred under 28 U.S.C. § 1407 to the Southern District of New York for the reasons stated in the order of August 16, 2006, and, with the consent of that court, assigned to the Honorable John F. Keenan.

This order does not become effective until it is filed in the Office of the Clerk of the United States District Court for the Southern District of New York. The transmittal of this order to said Clerk shall be stayed 15 days from the entry thereof. If any party files a notice of opposition with the Clerk of the Panel within this 15-day period, the stay will be continued until further order of the Panel.

**A CERTIFIED TRUE COPY**

MAY 1 9 2008

ATTEST
FOR THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

FOR THE PANEL:

Jeffery N. Lüthi
Clerk of the Panel

CERTIFIED COPY
MICHAEL McMAHON,          CLERK

BY
    DEPUTY CLERK

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA
## OFFICE OF THE CLERK

**RICHARD H. WEARE**
DISTRICT COURT EXECUTIVE / CLERK OF COURT
SANDRA DAY O'CONNOR U. S. COURTHOUSE,
SUITE 130
401 WEST WASHINGTON STREET, SPC 1
PHOENIX, ARIZONA 85003-2118

*Visit our website at www.azd.uscourts.gov*

**RONNIE HONEY**
CHIEF DEPUTY CLERK
SANDRA DAY O'CONNOR U. S. COURTHOUSE,
SUITE 130
401 WEST WASHINGTON STREET, SPC 1
PHOENIX, ARIZONA 85003-2118

**MICHAEL S. O'BRIEN**
CHIEF DEPUTY CLERK
EVO A. DECONCINI U.S. COURTHOUSE
405 W. CONGRESS, SUITE 1500
TUCSON, ARIZONA 85701-5010

June 2, 2008

J. Michael McMahon, Clerk
United States District Court
Southern District of New York
500 Pearl St.
New York, NY 10007

> **RE: Vicki Weeks, v. Merck & Company, Inc.**
> **Dist. of AZ No.        2:08-623-DKD**
> **S. Dist. of NY  No.        08cv 4774**

Dear Mr. McMahon:

Pursuant to the certified transfer order received from your Court, the above captioned case is being transferred to your court for all further proceedings. Enclosed are certified copies of the Transfer Order and docket sheet.  The complete case file may be accessed via our website at: **www.azd.uscourts.gov.**

Please acknowledge receipt of same on the enclosed copy of this letter and return.  Thank you.

**RICHARD H. WEARE, DCE/CLERK OF COURT**

**By:   s/ M. Pruneau**
        **Deputy Clerk**

cc: All Counsel
        MDL Panel

*The staff of the Clerk's Office ensures the effective, efficient and professional delivery of clerical and administrative services, while fostering a customer-friendly and employee-friendly environment.*

Receipt is acknowledged of the documents described herein.

New Case Number:   08cv4774

Richard D. Sletten, Clerk
U.S. District Court, Southern District Of New York

By: _____
        Deputy Clerk